**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| EDWARD EWING, | ) | CASE NO. 1:10-cv-1792 |
| | ) | |
| Plaintiff, | ) | JUDGE OLIVER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | VECCHIARELLI |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff, Edward Ewing ("Plaintiff"), challenges the final decision of Defendant, Michael J. Astrue, Commissioner of Social Security ("the Commissioner"), denying Plaintiff's applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 ("the Act"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. PROCEDURAL HISTORY

On October 19, 2006, Plaintiff filed an application for DIB and alleged a disability onset date of August 25, 1999. (Tr. 7.) The application was denied initially and upon reconsideration, so Plaintiff requested a hearing before an administrative law judge ("ALJ"). (Tr. 7.) On July 8, 2009, an ALJ held Plaintiff's hearing. (Tr. 7.) Plaintiff appeared at his hearing, was represented by counsel, and testified. (Tr. 17.) A vocational expert ("VE") also appeared at the hearing and testified. (Tr. 17.)

On August 13, 2009, the ALJ found Plaintiff not disabled under the Social Security Act. (Tr. 13-14.) On June 19, 2010, the Appeals Council declined to review the ALJ's decision, so the ALJ's decision became the Commissioner's final decision. (Tr. 1.) On August 13, 2010, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.)

On March 5, 2011, Plaintiff filed his Brief on the Merits. (Doc. No. 13.) On May 6, 2011, the Commissioner filed his Brief on the Merits. (Doc. No. 14.) Plaintiff did not file a Reply Brief.

Plaintiff asserts two assignments of error: (1) the ALJ failed to obtain a medical expert's ("ME") opinion to determine whether Plaintiff's impairments met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"); and (2) the ALJ improperly evaluated the credibility of Plaintiff's subjective statements of pain.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was 43 years old when his insured status expired in December 2004. (Tr. 12.) He had a high school education and could speak English. (Tr. 12) He had past relevant work experience as a stock handler/night manager at a supermarket, which the VE identified as semi-skilled work at the heavy exertion level. (Tr. 12.)

### B. Medical Evidence

The following is a relevant account of Plaintiff's medical evidence. On December 19, 2002, Plaintiff presented for the first time to Dr. Timothy Morley, M.D., with a complaint of low back pain. (Tr. 176.) Dr. Morley indicated that Plaintiff reported the following history of his low back pain.[1] While Plaintiff was working loading semi trucks for Hill Crest on June 23, 1989, he lifted a box weighing about 75 pounds and heard a pop in his low back. (Tr. 176.) He followed up with a "Dr. Sukalak," who gave Plaintiff chiropractic therapy. (Tr. 176.) Although the chiropractic therapy helped, Plaintiff still suffered pain. (Tr. 176.) He returned to work, but he continued to have pain in his low back that radiated down to his left knee. (Tr. 176.) Therefore, he presented to a surgeon, "Dr. Erwin," who informed Plaintiff that his condition did not require surgery and instead gave Plaintiff medication. (Tr. 176.) Plaintiff continued to see Dr. Erwin for three years and, when Dr. Erwin retired, he saw a "Dr. Dicello." (Tr. 176.) Plaintiff's back pain was well controlled with medication until he injured his back again in 1999. (Tr. 176.) He again presented to Dr. Sukalak, presumably for further chiropractic

---

[1] Medical records corroborating Plaintiff's reported medical history are not in the record evidence.

3

therapy. (Tr. 176.) He also presented to a "Dr. Demagon," who gave Plaintiff injection therapy to no avail. (Tr. 176.) Therefore, he presented to a neurosurgeon, "Dr. Zawari," who performed a discogram of Plaintiff's back and told Plaintiff that he needed surgery. (Tr. 176.) Plaintiff obtained a second opinion from a "Dr. Collis," who told Plaintiff that he did not need surgery. (Tr. 176.) Plaintiff had not worked since his second back injury and had been routinely seeing Dr. Dicello, who gave Plaintiff Vicodin and Valium. (Tr. 176.) Plaintiff was also taking Hydrocodone. (Tr. 176.)

Dr. Morley reported his findings upon physical examination as follows. Plaintiff had "moderate amounts of discomfort to palpation," and "slight spasms." (Tr. 176.) At about 70 degrees on a straight leg raise on his left leg, Plaintiff "complain[ed] of radicular symptoms down past his buttock and to his lateral thigh." (Tr. 176.) Plaintiff was able to heel walk and toe walk. (Tr. 176.) His deep tendon reflexes were decreased, but equal; he suffered no sensory deficits; and there was no atrophy. (Tr. 176.) Dr. Morley diagnosed Plaintiff with a lumbar sprain/strain and indicated that he would determine an appropriate treatment plan after obtaining and reviewing Plaintiff's medical records. (Tr. 176.) Dr. Morley also refused to give Plaintiff Hydrocodone. (Tr. 176.)

On January 9, 2003, Plaintiff followed up with Dr. Morley, and Dr. Morley reported that Plaintiff "Really doesn't show much of a change." (Tr. 175.) Dr. Morley continued that Plaintiff had "decent ROM, but he complains of pain past about 40 degrees of flexion, [although] he is able to go farther." (Tr. 175.) Dr. Morley decided to continue Plaintiff on Hydrocodone in small doses, and also prescribed Plaintiff Vicodin. (Tr. 175.)

On February 12, 2003, Dr. Morley reported that Plaintiff had undergone pain management, and Dr. Morley's examination of Plaintiff was "exactly" consistent with what was found during pain management:  Plaintiff suffered radiculopathy at 40 degrees of flexion; had decreased sensation through the lateral calf; and had decreased, but equal deep tendon reflexes.  (Tr. 174.)

On March 11, 2003, Dr. Morley recommended that Plaintiff obtain vocational training so that he could go back to work.  (Tr. 174.)

On January 15, 2004, Dr. Morley indicated that Plaintiff reported his medication for his back helped him function, and that he continued to work.  (Tr. 171.)

On April 8, 2004, Dr. Morley reported that Plaintiff had nerve root impingement, but that "it is not bad enough . . . to where [Plaintiff] wants to follow up and do anything about it."  (Tr. 170.)

On September 27, 2004, Plaintiff underwent an MRI of his lumbar spine upon referral from Dr. David Sukalac, M.D.  (Tr. 123-24.)  Dr. Peter Franklin, M.D., interpreted the results of the MRI and reported that Plaintiff suffered multi-level disc degeneration and spondylosis, with:  a T11-12 central subligamentous disc protrusion impinging on the ventral cord; an L3-4 left foraminal/ far lateral protrusion impinging on the exiting left L3 nerve root; an L4-5 central disc protrusion impinging on both budding L5 nerve roots; and an L5-S1 central/left paracentral disc protrusion impinging on the crossing left S1 nerve root with minimal posterolateral displacement.  (Tr. 124.)

Plaintiff continued to present to Dr. Morley often until March 8, 2007.  (Tr. 152-75.)  Before Plaintiff's insured status expired, Dr. Morley reported the following.  Plaintiff had positive straight leg raises (Tr. 166-69, 173); spasms in his back (Tr. 165-68, 173);

an antalgic gait while heel walking and toe walking (Tr. 166-68, 171); and decreased deep tendon reflexes (Tr. 173).  On April 8, 2004, Plaintiff reported numbness in his lateral thigh.  (Tr. 170.)  However, at times Dr. Morley noted that Plaintiff did not exhibit sensory deficits (Tr. 170-73) or atrophy  (Tr.169).

Plaintiff's complaints of low back pain, and Dr. Morley's evaluation of Plaintiff, remained essentially consistent after Plaintiff's insured status expired.  (*See* Tr. 152-65.)  So, too, did Plaintiff's account of the effectiveness of his medications:  October 23, 2003, Dr. Morley indicated that Plaintiff reported he was "at least functioning somewhat well with . . . medications" (Tr. 172), and three and a half years later, on March 8, 2007, Dr. Morley indicated that Plaintiff reported "he's 'just getting by'. . . he's in constant pain every day but he's 'used to it' . . . and . . . medications enable him to function at a higher level."  (Tr. 152.)

On January 12, 2007, the Social Security Administration issued a Disability Determination and Transmittal form, form SSA-831-C3, indicating its initial determination that Plaintiff was not disabled through December 31, 2004.  (Tr. 44.)  This determination was based on the opinions of state agency consultative physician Dr. Jon Starr, M.D., who electronically signed the form.[2]  (Tr. 44.)

On April 23, 2007, state agency medical consultant Dr. Charles Derrow, M.D., reviewed Plaintiff's medical records and assessed his physical residual functional capacity ("RFC") from Plaintiff's alleged disability onset date to December 31, 2004, when Plaintiff's insured status expired.  (Tr. 177-84.)  Dr. Derrow's opinions are as

---

[2] Dr. Starr's actual evaluation of Plaintiff does not appear to be in the record.

follows. Plaintiff had the ability to lift and carry 20 pounds occasionally and 10 pounds frequently; could sit, stand, and walk for 6 hours in an 8-hour workday; and was not limited in his abilities to push and pull except to the extent that he was limited in his abilities to lift and carry. (Tr. 178.) Plaintiff was not otherwise limited. (Tr. 179-81.) Plaintiff's subjective statements of his symptoms and limitations had been made over an extended period of time and were consistent with and supported by the medical records. (Tr. 182.)

Also on April 23, 2007, the Social Security Administration issued a Disability Determination and Transmittal form, form SSA-831-C3, indicating its determination upon reconsideration that Plaintiff was not disabled through December 31, 2004. (Tr. 45.) This determination was based on Dr. Derrow's RFC assessment of Plaintiff, and in the physician signature block on the form, the Social Security Administration referred to Dr. Derrow's RFC assessment on that day. (Tr. 45.)

**C.     Hearing Testimony**

**1.     Plaintiff's Hearing Testimony**

Plaintiff testified at his hearing as follows. During the relevant period of time, Plaintiff experienced low back pain and pain shooting down his sciatic nerve and into his knee. (Tr. 23.) Walking and sitting aggravated his pain. (Tr. 23-24.) Plaintiff was able to walk for 30 to 40 minutes before he needed to sit down to recuperate, and he needed to sit for 10 to 15 minutes before he was able to walk again; however, he was able to sit for no more than 20 to 40 minutes at a time before he needed to stand. (Tr. 25.) Plaintiff's pain interfered with his sleep, which caused him to be tired and

7

disoriented during the day. (Tr. 31.)

Plaintiff would suffer pain every 20 to 30 minutes; and he had to lie down on the floor to obtain relief two to four times a day, for 10 to 20 minutes at time. (Tr. 24-26.) Plaintiff also wore a back brace and knee brace during the day, sometimes exercised in a pool, and took pain medication. (Tr. 26-27.) The pain medication decreased his pain and allowed him to function, but it also produced side effects including depression, fatigue, and mood swings, which lasted for 45 minutes after taking the medication. (Tr. 27.) Exercise, stretching, and chiropractic therapy sometimes provided relief for up to half of a day, but they also sometimes aggravated his pain. (Tr. 30.) Plaintiff was never pain free. (Tr. 26.)

Plaintiff lived with his father. (Tr. 31.) His father handled such matters as the grocery shopping and lawn maintenance. (Tr. 31.) Plaintiff was responsible for taking care of the inside of the house, but he required the help of his sister, who visited approximately once a week. (Tr. 31.) Plaintiff's doctor at the time, "Dr. Sucalac," ordered Plaintiff not to lift anything. (Tr. 25.)

### 2. Vocational Expert's Hearing Testimony

ALJ posed the following hypothetical question to the VE:

> I would like you to consider someone who as of the onset date in this case, is 38, and . . . has a GED, and the past relevant work experience of Mr. Ewing. This person would be limited to the light level exertionally. But [sic] that I mean, specifically they could lift and carry up to 20 pounds occasionally, 10 pounds frequently. They could stand and walk for six hours out of the eight hour day. They could sit for at least six. And they could push or pull up to 20 pounds occasionally, and push or pull 10 pounds frequently. This individual could not climb ladders[,] ropes[,] or scaffolds. And they could occasionally stoop and occasionally crawl—I'm sorry—occasionally crouch.

(Tr. 40.) The VE verified that such a person could not perform Plaintiff's past relevant

8

work, but could perform work as a bench assembler (for which there were 1,000 jobs in northeast Ohio and 200,000 jobs nationally); wire worker (for which there were 1,200 jobs in northeast Ohio and 200,000 nationally); and final assembler (for which there were 700 jobs in northeast Ohio and 100,000 jobs nationally). (Tr. 40-41.)

The ALJ then presented the following hypothetical person to the VE:

> This person would not able to sustain even sedentary work. Specifically this individual could lift and carry 10 pounds occasionally, lift and carry 5 pounds frequently. They could stand and walk for one hour of the . . . eight hour work day. And they could sit for four hours. They could push or pull up to 10 pounds occasionally and 5 pounds frequently.

(Tr. 41.) The VE testified that such a person could not perform a full-time job. (Tr. 41.)

The VE further testified that her proffered jobs were examples, and that there were other jobs that Plaintiff could perform; that her testimony was consistent with the Dictionary of Occupational Titles; and that the employment numbers she gave came from her own experience combined with data from the Bureau of the Census and the Department of Labor. (Tr. 42.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). To receive SSI benefits, a recipient

9

must also meet certain income and resource limitations. 20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g), 404.1560(c), and 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2004.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 25, 1999 through his date last insured of December 31, 2004.

3. Through the date last insured, the claimant had the following severe impairment: Degenerative Disc Disease of the Lumbar Spine.

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work . . . except he can lift, carry, push and pull up to 10 pounds frequently and 20 pounds occasionally. He can sit, stand, and walk up to six hours each in an eight hour work day with normal breaks. The claimant can never climb ladders, ropes or scaffolds. He can perform no more than occasional stooping and crouching.

6. Through the date last insured, the claimant was unable to perform any past relevant work.

. . . . .

9. The claimant had no transferrable skill within his residual functional capacity.

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 25, 1999, the alleged onset date, through December 31, 2004, the date last insured.

(Tr. 9-13.)

11

## V. LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. The ALJ's Analysis of the Listings

Plaintiff argues that the ALJ erred by failing to obtain the opinion of an ME to

12

determine whether Plaintiff's impairment or combination of impairments met or medically equaled Listing 1.04 regarding disorders of the spine.  The Commissioner responds that the record contains two forms SSA-831-U5[3] that were signed by Dr. Starr and Dr. Derrow, respectively; that the ALJ's determination regarding the Listings is supported by those forms SSA-831-U5; and, therefore, the ALJ did not need additional medical expert testimony.  The Court agrees with the Commissioner and finds that Plaintiff's assignment of error lacks merit.

A state agency consultative physician's medical opinion is considered an expert opinion.  S.S.R. 96-6p, 1996 WL 374180, at *1.  A state agency consultative physician's signature on a "Disability Determination and Transmittal" form is proof that a physician designated by the Social Security Administration considered whether the claimant's impairments meet or medically equal an impairment in the Listings at the initial and reconsideration levels of administrative review.  S.S.R. 96-6p, 1996 WL 374180, at *3; *Curry v. Sec'y of Health & Human Servs.*, No. 87-1779, 1988 WL 89340, at *5 (6th Cir. Aug. 29, 1988) (citing *Fox v. Heckler*, 776 F.2d 738, 742 (7th Cir. 1985)).  An ALJ may rely upon such expert opinions to determine whether a claimant meets a listing requirement.  *Candela v. Astrue*, 1:10-cv-1603, 2011 WL 3205726, at *9 (N.D. Ohio July 28, 2011) (citing S.S.R. 96-6p, 1996 WL 374180, at *3 *and Curry*, 1988 WL 89340, at *5); *Branch v. Astrue,* 4:10-cv-485, 2010 WL 5116948, at *8 (N.D. Ohio Dec. 9, 2010) (same).

Plaintiff concedes that "the record may not contain each item required to meet

---

[3] A form SSA-831-U5 is otherwise known as a Disability Determination and Transmittal form.  S.S.R. 96-6p, 1996 WL 374180, at *3.

13

the listing." (Pl.'s Br. 11.)  Furthermore, Plaintiff cites no authority in support of his contention that the ALJ was required to obtain medical expert opinion evidence. Nevertheless, Drs. Starr and Derrow are state agency consultative physicians who signed Disability Determination and Transmittal forms indicating that Plaintiff was not disabled between his alleged onset date and the date he was last insured.  In other words, the record contains medical expert opinions regarding whether Plaintiff's impairment or impairments met or medically equaled an impairment in the Listings. Plaintiff has not explained how these forms are inadequate to establish medical expert evidence in support of the ALJ's Listing determination, or why another medical expert opinion was necessary.[4]  Accordingly, this assignment of error lacks merit.

## C. The ALJ's Assessment of Plaintiff's Credibility

Plaintiff argues that the ALJ failed to make a proper credibility assessment of Plaintiff's subjective statements of pain pursuant to 20 C.F.R. §§ 404.1529(c) and 416.929(c), and Social Security Ruling 96-7p, because he did not consider many of the factors those rules required.  The Court disagrees.

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ.  *See Siterlet v. Sec'y of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).  The ALJ's credibility findings are entitled to considerable deference and should not be discarded lightly.  *See Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).  However, "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d

---

[4] Indeed, Plaintiff did not file a Reply Brief to address these issues.

14

1027, 1036 (6th Cir. 1994). The ALJ's decision must contain specific reasons for his finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the claimant and to any subsequent reviewers the weight he gave to the individual's statements and the reasons for that weight. S.S.R. 96-7p, 1996 WL 374186, at *1.

In determining the credibility of a claimant's statements, an adjudicator must consider the entire case record, including the objective medical evidence, the claimant's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. *Id.* Although a claimant's description of her physical or mental impairments, alone, is "not enough to establish the existence of a physical or mental impairment," C.F.R. §§ 404.1528(a), 416.929(a), "[a]n individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence," S.S.R. 96-7p, 1996 WL 374186, at *1. The ALJ must consider the following factors:

  (i)  [D]aily activities;

  (ii)  The location, duration, frequency, and intensity of . . . pain;

  (iii)  Precipitating and aggravating factors;

  (iv)  The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

  (v)  Treatment, other than medication, . . . received for relief of . . . pain; and

15

>   (vi)   Any measures you use or have used to relieve . . . pain.

S.S.R. 96-7p, 1996 WL 374186, at *3; *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir. 1994). Furthermore, the consistency of the evidence, including a claimant's subjective statements, is relevant in determining a claimant's credibility. 20 C.F.R. § 404.1527(c); S.S.R. 96-7p, at *5.

Here, the ALJ's decision contains specific reasons for his finding on Plaintiff's credibility that are supported by the evidence in the case record, and that are sufficiently specific to make clear the weight he gave to Plaintiff's statements and the reasons for that weight. The ALJ explained that he determined Plaintiff's RFC based on all of Plaintiff symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. (Tr. 10.) Specifically, the ALJ noted Plaintiff's subjective testimony about how his pain prevented him from working; how he required medication to relieve his pain; how his medication made him feel constipated, tired, and depressed; and how he was limited in his ability to perform activities of daily living. (Tr. 10.) The ALJ concluded, however, that Plaintiff's "testimony regarding his symptoms exceeds the objective medical evidence of record." (Tr. 11.) The ALJ explained that Plaintiff reported to Dr. Morley that he had only "moderate" pain; that his pain was controlled by medication; that, when he took his medication, he was able to function; and that his pain was not bad enough to "follow-up and do anything about it." (Tr. 11.) Furthermore, the ALJ noted that he did not fully credit Plaintiff's subjective statements because Plaintiff told the ALJ during his hearing that he had not been working in 2004 despite the fact that Plaintiff told Dr.

16

Morley on two occasions that he *was* working in 2004, and Plaintiff would not tell the ALJ the nature of that work. (Tr. 11.)

Plaintiff argues that the ALJ's assessment of Plaintiff's credibility is not supported by substantial evidence because other evidence supports Plaintiff's subjective statements. This argument relies on an incorrect legal standard, however, as a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

Plaintiff also suggests that the ALJ erred because he did not *discuss* certain factors, such as the frequency of Plaintiff's pain, aggravating factors, Plaintiff's attempts to alleviate his symptoms such as his home exercise program and alleged need to lie down often throughout the day. But Social Security Ruling 96-7p requires such factors to be *considered*, not *discussed*, and Plaintiff has not cited any authority providing that an ALJ must exhaustively discuss every factor of his analysis. To the contrary, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).

The ALJ's decision is sufficiently thorough, clear, and specific for the Court to conclude that the ALJ considered those factors required under the Code of Federal Regulations and the Social Security Rulings. Accordingly, remand is not appropriate. *See Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)) ("No principle of administrative law or common

sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED and judgment be entered in favor of the Commissioner.

s/ <i>Nancy A. Vecchiarelli</i><br>U.S. Magistrate Judge

Date: August 12, 2011

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of this notice. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** *See* ***United States v. Walters*, 638 F.2d 947 (6th Cir. 1981);** ***Thomas v. Arn*, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986)**.